## STATE v. NATHANIEL GREEN.

(Filed 26 March, 1924.)

1. **Evidence—Witnesses—Voluntary Statements—Motions—Appeal and Error—Objections and Exceptions.**

    Incompetent evidence, voluntarily given by a witness and not elicited by the question asked him, should be stricken out, on motion of the objecting party, but his mere exception is insufficient.

STATE *v.* GREEN.

**2. Same—Intoxicating Liquor—Harmless Error.**

There was evidence, upon the trial for illicit distilling, that upon information received the officers of the law discovered the defendant engaged in the unlawful manufacture of whiskey: *Held*, evidence of how the officers made this discovery, if erroneously admitted, was harmless error.

**3. Evidence—Character—Intoxicating Liquor.**

Where a witness to the character of another of defendant's witnesses, upon trial for violation of the prohibition law, has testified that the witness's character was good, as far as he knew, it is not reversible error to defendant's prejudice for him to add that he did not think it bad character to buy a little whiskey, under an admission that the one concerning whose character he was testifying had gone into the woods with another for that purpose.

**4. Evidence—Witnesses—Interest—Instructions.**

An instruction, upon the trial of defendant, for unlawfully manufacturing whiskey, when he and his relatives had testified in his behalf, that they should receive their testimony with caution and scrutiny, but if the jury were satisfied that they were telling the truth, it would be their duty to give it the same credit as that of disinterested witnesses, is not objectionable.

APPEAL by defendant from *Cranmer, J.,* at October Term, 1923, of BRUNSWICK.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*John D. Bellamy & Sons for defendant.*

CLARK, C. J.  The defendant was convicted of manufacturing liquor, or aiding and abetting in such manufacture.  The evidence showed that the defendant was actively engaged in the manufacture of liquor at the time the officers saw him at a distillery, pursued him, and captured him. The distillery had just been fired up, it was full of mash, and the worm had been connected up.  The defendant was the only person present at the time the officer came up within thirty steps of him.  He ran, and the officer ran after him and caught him.  The defendant's clothing showed that he had been operating the still, he having smut all over his trousers and shirt, and beer or mash upon his trousers.  He told one of the officers that he was operating the still when they caught him, and, when carried before the justice of the peace and asked whether he were guilty, or not, said he was.

Another officer testified that he had found another still, at which he had arrested an old negro, named Jim McLean, about a quarter or half a mile from where they found the defendant.  The witness said: "Jim pointed out the direction where we could find the defendant and his still."

The defendant objected to this testimony, which was overruled, and he excepted. There are two reasons why the admission of this statement is not reversible error. First, it was a voluntary statement by the witness, and the only way to take advantage of the error was to move to strike out the testimony and to except to the ruling if this was refused. Instead of doing this, the defendant's counsel contented himself with a simple objection. Second, the error in admitting this testimony was, under the circumstances of this case, harmless. The defendant himself had twice admitted that he was at the still and was operating it when the officers came up. It was in consequence of what Jim told the officers, they went to the still and found him there, operating it, and not evidence of his guilt.

The second exception was to the cross-examination of a character witness introduced by the defendant. The solicitor sought to test his evidence as to the character of another witness, who, by his own admission, went into the woods with a man who was manufacturing whiskey, to get whiskey from him. If there was any error in asking this question, it was eliminated by the answer of the witness, who answered that the character of the defendant was good, as far as he knew, adding: "I would not like to say that every white man or every colored man who tried to buy a little whiskey had a bad character."

Exceptions 3 and 4 were because the charge of the judge to the jury was as follows: "It is the law of North Carolina, gentlemen, that when a defendant, or one interested in the verdict of a jury, testifies, it is the duty of the jury to take his testimony with a grain of allowance and carefully scrutinize and scan it; but if, after such scrutiny, you are satisfied he is telling the truth, then it would be your duty to give his testimony the same credibility that you would give the testimony of a disinterested witness. Credibility, gentlemen of the jury, means worthiness of belief."

This instruction was correct. It has always been so held, and has recently been reaffirmed in *S. v. Barnhill,* 186 N. C., 446, and in *S. v. Williams,* 185 N. C., 666. In the latter case the Court said that it was no error where the court told the jury "they should receive the testimony of the defendants and relatives with caution and scrutiny; but if, after such scrutiny, you are satisfied that they are telling the truth, it will then be your duty to give it as much credit as you give the testimony of a disinterested witness."

In *S. v. Barnhill, supra,* the Court quoted *S. v. Williams* with approval, and also many other cases, for they are all uniform in expressing the idea that where defendants or relatives or persons interested in the action testify, the jury should consider their testimony with caution and scrutiny; but if, after such scrutiny, the jury are satisfied they are

---

telling the truth, it will then be the duty of the jury to give it as much credit as is given the testimony of a disinterested witness.

In *S. v. Nat,* 51 N. C., 114, it was held not improper for the judge to say to the jury that "when near relations deposed for near relations, their testimony was to be received, and ought to be received, with many grains of allowance"; and extended the rule to the testimony of the fellow-servants of the prisoner, adding, however, that if, after such scrutiny, the jury believed the witness, they should give as full credit to his testimony as if he were disinterested.

To the same purport, citing many cases, are *S. v. Fogleman,* 164 N. C., 461; *S. v. Byers,* 100 N. C., 518, and *S. v. Lance,* 166 N. C., 413, often cited since.

There is no hard and fast form of expression, or consecrated formula, required, but the jury should be instructed that, as to the testimony of relatives or parties interested in the case and defendants, that the jury should scrutinize their testimony in the light of that fact; but if, after such scrutiny, the jury should believe that the witness has told the truth, they should give him as full credit as if he were disinterested.

In this case the only witness for the defendant (except one character witness) was himself, and he had twice admitted his guilt.

No error.